Case 24-5324, Seville Fabricating Inc, et al. v. Joshua Tarter, et al. Argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellant when ready. Good morning, Your Honors. Andrew Sparks on behalf of the appellants. I reserve five minutes for rebuttal, please. The question presented for this court is whether the plaintiffs can ever seek redress for the illegal acts of the defendants. Under the defense theory, there are no set of circumstances where the plaintiffs can ever seek recovery of the tens of millions of dollars that were stolen by the defendants in this case. I'm sure the court is familiar with procedural history and the factual background, so I want to move to the direct questions. First is this. What was the composition? You're saying there's no why, because you couldn't correct whatever the problem was within the statute? Correct, Your Honor. And so the issue is this. It's not a big deal. I'm just curious. Well, I think the answer is this, if I'm understanding your question, which is there either can be a direct corporate action or there can be a derivative action. The direct corporate action must be authorized by the board of directors of the corporation. So the fundamental question is, who were the members of the board of directors? Is the dismissal with or without prejudice? The original summary judgment order was without prejudice, as I recall. Yes, sir. So, in theory, you could correct the problem and go back? Except for there appears to be no possible combination in which the defendants will acknowledge what the correct composition of the board was. I mean, I thought your theory now, or at least one of your theories, is Anna Liu is the only board member. And so couldn't she call a board meeting, elect three board members, and then do what she needs to do? And would you have a statute of limitations problem under that scenario? Well, one issue is the company has been sold since then. And so, while Seville still exists on paper, the company has been sold since this all occurred. Regarding whether or not she could call a new meeting with this, again, our position on this is that David Tarter was the correct president of the Seville board of directors. Moving to the issue of Anna Liu, she authorized the litigation. Your position is the third generation. I can't remember who they were. David, Joy, Donald, and Anna Liu were the board?  At the 28 meeting where they voted? Yes, sir. Can I go back to this question? Yes, sir. I'm sorry. No, go ahead. If the company's been sold, I'm confused. Who then has the cause of action right now? Who's reserved in the selling of the company? Reserved to? To the plaintiffs. Yes. To the shareholders who were the sellers? Yes. And then, how does that work with the composite? Do you have the board of a non-existent entity then? Or the entity still exists? And one of the assets is this cause of action? Yes, the entity would still exist. Okay. All right. Sorry. No, go ahead. Going back to the initial position, which was David Tarter remained the president of Seville. Under this situation, we are simply following the clear application of the bylaws, which state the following. You can only resign in writing. David Tarter never resigned in writing. If he's the president, then what... Are you saying that Josh couldn't sign any contract? All the contracts in the interim that he purported to approve as president, are they all void? Well, I think under the doctrine of... If he's the president, David unwittingly, I guess everybody is saying he's... Josh is the president conducting the business. You're holding yourself out to third parties as the president. And this one person's authorized to do business, but it turns out he's not. Can you go back and say, hey, sorry, they're all void? Judge, I don't think you can for a couple of reasons. One, statute of limitations. Second, the doctrine of apparent authority. And Josh just simply declared himself president. There is no corporate acts. I mean, you cannot de facto become president of a company. If a company wants you to be president of the company, there must be a board of directors meeting. Who was running the company? Josh was running the company. They were all running the company. Was David involved in running the company? David was present. No, he was not involved in the day-to-day operations of the company. But he did not just run off. Neither did Donald, neither did George. But you thought he didn't do anything between 2013 and 2018. He was not running the day-to-day operations of the company. I mean, he was physically present, though. But I thought he testified in his deposition. He basically thought he was out. He did. That's correct. But at the same time, being president of the board of directors and the day-to-day operation of the company are two different things. I mean, simply not being involved in the day-to-day operation of the company. Most board of directors are not involved in the day-to-day operation of the company. Is that a position, president of the board of directors that's in the bylaws? Yes, sir. Do you happen to know where? Yes, sir. Article 2. It's exhibit A to the complaint. So even though he thinks that he's not there and testifies about that, you're saying as a formalistic matter. What about the district courts? I mean, this, I guess, comes down to the can you only resign in writing or is there another way to do it? The district court thought that the writing was not exclusive in the exclusive way, I suppose. What's your response to that? Well, a couple of things. The district court originally thought that he had not resigned. That was the original order, Record 31. You mean the 12B6 ruling? Yes, there was a 12B6 ruling. But regarding that standard of review there, Your Honor, if you review Record 31, the district court actually considered records, documents outside of the pleadings. Specifically, the defendants actually filed a tape recording of the hearing. Well, that's kind of water under the bridge. So let's go to the summary judgment ruling then. Okay. So at some point the district court says, hey, this is not the exclusive way. May is permissive. Delaware has a case that seems to be on point. What is your response to that? And so if you assume that it's correct and David Tarter is not president of the CVO Board of Directors, the question becomes who is? Wait. Pivot to the Anna Lou or are you going to defend the – We would pivot to the futility exception. Well, wait. Do you have an – back to Judge Nalbandian's question. Do you have an answer to what happens under the abandonment provision? If he can resign without a writing, has he abandoned the position? No. We do not believe so because the bylaws – again, I would turn to the bylaws which are attached to the complaint. The bylaws specifically provide if somebody wants to be removed from a – there's no abandonment provision in there. You can be removed, you can die, you can resign in writing or you can have new people elected. Those are the way in which the bylaws construct this company. None of those occurred. But what is – But that argument is he hasn't abandoned, right? I mean, you're responding and saying you can't abandon under the bylaws. That's your answer. That's the answer. That's not a way in which you remove yourself from the Board of Directors. But then you come to the question of this, which is if there is no Board of Directors, it is futile to make a demand to a Board of Directors. We're sitting here seven years after the meeting in February. I mean, why wouldn't Anna Liu be the only Board of Director at that point? And so what we did in this case – so this was originally started with another case in front of Judge Reeves in which we filed a motion. We did not make a demand. We said it was futile. The defendants came in and said, no, it was not futile. You should make a demand to the Board. We attempted to make the demand to the Board, and there were multiple notices that were put out. When we put out notices to every configuration that we could think of, at the meeting in February of 2018, all four of the directors showed up. Was one of the configurations that Anna Liu was the only Board member?  No, sir.  No, sir. But you argue now that that is at least a possibility. Our argument on that is that the defendants' theory is that resignation, transfer of shares, abandonment of the Board of Directors results in you becoming no longer on the Board. If that is true, then it must be true for Donald and Joy as well. And in that situation, regarding whether or not Anna Liu should have just called her own Board meeting, I mean, I don't think she's required to call her own Board meeting to appoint herself Director and then have – It says the bylaws say there shall be four directors. So doesn't she have to call a Board meeting and appoint the other three? Well, the bylaws actually discuss about vacancies as well. And so, yes, there are. But it also deals with vacancies. And when there are vacancies, there can be a couple ways that you can fix that. One, a meeting of the stockholders. Two, a meeting of the Board of Directors. It also allows the remaining Board of Directors to assume all responsibility for the corporation. Are you asking us to hold that there is or was standing? Or are you asking us to hold that the district court erred in granting summary judgment? So the request would be an error in the granting of summary judgment. Because you would say there are still disputed facts about standing? Or do you think standing is settled? I think standing is settled. It is either a direct or a derivative suit. I mean, at some point – Those are fact questions. Or are they? I mean, that's my question. Is that a legal question that we could decide right now, de novo? Or is that a fact question that was unresolved? I do believe you could decide, de novo. I'm out of time. I answered this question. I do believe you can decide, de novo, the following. Whether or not an act in contravention of the bylaws could still be considered to be a resignation. And if not, then what is the Board composition at that point? And I would note that at the meeting, there were no objections. The entire third and fourth generation appeared. Nobody once stood up and said, this isn't the appropriate combination of the Board. Not one time. And that's a waiver of the issue. And so all possible combinations were in that room. The only ones that voted were the third generation. Okay. Any other questions? Thank you. Thank you, Your Honor. You'll have your full rebuttal time. Good morning, Your Honors, and may it please the Court. I'm Michael Labate on behalf of the FLEs. Your Honors, I think we need to begin by unpacking something that was conflated from the podium this morning. David's role as an officer in the company and his role in the director in the company are two separate things. And each of them is an independent bar to the direct standing of Seville here. The director statute does not require resignation of writing. That's not in the statute. The bylaws don't require resignation of writing of an officer. David was the one who purported to call the meeting. If he was not the president, and it's the president of the company, there is no role of president of the board. But how did he not become – he never orally communicated he wasn't on the board. He never in writing communicated he wasn't on the board. So is your argument just pure abandonment under whatever it is, 346 of Fletcher? No, when he conveyed his shares to the next generation and stepped back through his conduct and through his behavior, he indicated to everybody else he wasn't. So that's abandonment. You're saying he's abandoning. He never in writing or orally said. We don't claim he did it in writing. And you don't claim he did it orally? Correct. But it's not required to be done in writing. Well, we can dispute that, but let's assume you're right. You're saying under Fletcher 346, that's abandonment, right? Yes, but Judge Tabar, I do want to be clear about one thing. The debate about the Delaware case law applies only to the role as a director. The statute and the bylaws for an officer do not require writing. They're separate. Right, but we're not. So I just wanted to be clear on that. Yeah, but we don't care about the officer, right? What we care about, about whether the board meeting was proper. Was David's role as whether he was the president. And as you indicated in the earlier questioning, David himself testified he wasn't the president. Anna Liu, his wife, filled out multiple forms with the Secretary of State. What do you do when he shows up? I'm sorry to interrupt you. What do you do in 2018 when he shows up, asserts authority, the others show up, they vote. Other than Donald, who was late. But Joy, is his wife's name Joy? Joy, yes. Joy abstains, but she's there. No one objects. Everyone's there. No one objects. Well, I don't think that's quite a fair characterization of what's happening. First of all, there is a recording in the record. It's attached to R11 in the district court. If you listen, it's a chaotic four or five minute recording. They get there, and when Donald's not there, immediately Anna Liu moves. David asserts, I'm the president. They see that Donald's not there. They think they can rush a vote. Donald's probably in the parking lot at this point in time, because you can hear him arrive in the meeting. But everyone's assuming they can do it. No, that's not true. Nell was there with a statement. David says, only the third generation's allowed to speak. Only the third generation's allowed to vote. This notion that they waved because nobody objected. Under 350 of Fletcher, he's reasserting, and thus the abandonment isn't effective. No, Your Honor. I don't think that's correct. First of all, this is not a trial. I just want to be clear about this notion that at the meeting, Josh was required to jump up and scream. There's no contemporaneous objection. Have you read 350 of Fletcher? Because it says, so participation of a director at a meeting may be sufficient evidence of the director's intention to revoke resignation. Well, we're talking about the president role versus the director right now. And the director, I have different arguments, if I can address that. Okay, give me the director argument, because I'm just trying to, all I care about right now, all we care about, is trying to figure out whether there's a cause of it. Whether they can go forward. Understood. If you look at 9334, the record, this is page 2037. What happens there is there's emails among Anna Lou and the members of the Next Generation saying, these are the directors of the company. This is in 2016. They held that out to Hilliard Lyons. We have de facto directors being established in 2016, none of whom are David. It's Anna Lou and three members of the Next Generation. The notion that nothing could have been done, where counsel... I'm sorry, so your position is the board, the proper board is Anna Lou and the three members of the Next Generation. Well, there was never a factual finding on that below. Our position is... Well, but what is your affirmative position? What do you think, there's got to be a board, right? Yeah, well... What is it? It is very likely Anna Lou and three members of the Next Generation. At different points in time, different people were acting as directors and their meeting notice said this. Here's what our position is as to why, at the end of the day, it doesn't matter that the district court never made a finding as to which three members of the Next Generation. Because they never called a meeting of any group of directors other than the third generation to vote on the resolution. Again, they thought they had sort of slipped it through. When Donald was two minutes late, there was a request to re-vote. When Donald arrived, they said no. They thought that they had this great loophole that they were going to exploit to bring suit. When they tried to vote for the next company after Donald arrived, it failed. They could have called all the other... Why... What is the law that tells me there can be some kind of de facto director like the Next Generation? Yep, there are numerous cases in Kentucky. We cited Porter's administrator, 45 Southwest, 2nd, 495 in our brief. But that's not the only one. Tri-state developers, 343 Southwest, 812. There's the Porter v. Shelby Cemetery Co., 2009, Westlaw, 722, 995. Burley Tobacco Co., 178 Southwest, 1102. Judge Thapar, in your... How many board meetings has this de facto board had? They had several in the years leading up to 2018. They were conducting the business of the corporation. And again, Anna Liu, in writing, admits, in response to the meeting notes that's at that page that I cited, at page 2037, yes, I agree, this is what happened. So it wasn't until they lost the first lawsuit for lack of standing, and they wanted to bring the second lawsuit, that they came up with this theory that, oh, wait a minute, we think David's still the president, and David's still on the board. And was Anna Liu, during that time, leading up to 2018, acquiescing to this, as you described, de facto situation of the others acting as board members? Yeah. Let me just read, if I may, this email. It's two sentences. It's very short. This is page 2037 on the record. The first NEL, who's one of the members of the fourth generation... 2037, which is what? It is an email that's attached... No, is it 93 what? 34, Your Honor. 93-34. The first bullet point in the meeting notes that NEL took said, decided that Anna Liu, Lou Ann, Josh, and Keith will be the family members that will serve as the original board members. And then Anna Liu responds to that. Looks good, NEL. Thank you for keeping the notes. This is... Hilliard Lyons was being sought out for counsel about how the business should be run, and maybe they should bring in outside directors. Those are the people they represented to the outside world were the directors of the company. Anna Liu signed under penalty of perjury statements with the Secretary of State, saying Josh was the president at that point going forward. Every indicia to within the company and to the outside world is that the third generation, except for Anna Liu, stepped back, and the fourth generation stepped forward. There was legal support for that. I mean, I understand that the indicia was what you described, but you think it had legal effect. Yes, absolutely. I cited a number of cases recognizing de facto directors. And again, I want to point out there's a difference in the statutes between officers and directors. Officers need not resign in writing. And David's own testimony is that he wasn't the president after 2013. If we disagree with you, if we disagree and we think, man, it kind of makes sense that Anna Liu was the only director at the time of this meeting. What is wrong with that theory? There's two things wrong with that theory. One is, as the district court found, it wasn't properly preserved and pled. But even putting that aside, going to the merits, as was pointed out, there shall be four directors of the company, as in the bylaws. Say that again. There shall be four directors of the company in the bylaws. And I just showed you that email. There were de facto directors acting. They took actions on behalf of the corporation. This notion that Anna Liu was running the show by herself is belied by everything that was in the case. The district court relied on and said it wasn't properly pled. You said that too. But why isn't it an affirmative defense? The corporation can bring suit. The defense has to say, no, you're not properly bringing it. They don't have to say the board voted and we can bring suit. Is that what I don't, when I read corporate complaints, they don't say that. Go ahead. Sorry, I didn't mean to cut you off, Jeff. No, you're fine. The suit needs to be authorized by the board, by the proper board. And the bylaws said there are four members of the board. To answer my question, why does it have to be pled in the complaint? Pled who the members of the board are? Pled that it was properly authorized. Well, because they have the burden to establish standing as the plaintiff in the case. What type of standing? It's not, and I'm, I'm sorry. You all are citing standing cases that are, like Sierra Club. Why is Sierra Club getting cited? And I'm sorry, I'm using standing in the colloquial sense. As the district court pointed out in her summary judgment ruling, it's the right to sue. The CVIL in a direct action has to establish it has the right to bring suit. But then in her summary judgment action for standing, she cites Article 3 cases. And so that's why the proper pleading is the wrong way to analyze this. Well, at no point in this case, you know, there wasn't a Rule 15 motion to amend the pleadings. To assert, it's not, this theory of liability. But it seems to me it's an affirmative defense. You're defending and you're saying the corporation doesn't have a right to sue. The corporation can sue and they don't have to prove they have a right to sue. Or is it a counterclaim even? Did your client have to bring a fiduciary duty counterclaim? Not just an affirmative defense and say, you, this company is not, you, this board meeting was out of order essentially. And breached a fiduciary duty by bringing this claim. We don't have to argue breach of fiduciary, excuse me, breach of fiduciary duty in part because we don't believe David's a director. We had to simply argue there was no proper authorization under the law to sue. To go back to Judge Tappara's question, why is it not an affirmative defense? If Procter & Gamble sues Kroger, they don't have to put it in the complaint. Oh, the board of directors authorized this and, you know, the in-house counsel authorized this, etc., etc. If the other company says, if they can even raise it, hey, you didn't internally authorize this suit, they can raise it as a defense, but why do you have to plead it? That is absolutely, for a corporate direct action, it is absolutely an element of the claim that it was authorized by the corporation. That it was validly authorized. But again, once they've raised it, we challenged the authorization. Element of the claim, what do you mean? That it was properly authorized. There's a duty, breach. Yeah, that the board of, under the statute. But I've never seen, maybe I'm wrong and I practiced law for a while, but who knows. I never saw something like this corporation can sue or be sued, etc., etc. The board of directors adopted a resolution that allows this lawsuit. I've never seen that pled in a complaint. They did plead it here. They pled it extensively. Do you have to plead that in a complaint? I believe a corporation trying to bring a direct claim must plead that it was authorized by the board of directors, yes. So there are hundreds of thousands of complaints in this country right now that should be booted out because they don't plead that it's not affirmatively pled. No, your honor, I'm not saying that. But again, I don't, I think we're getting hung up on something that at the end of the day wasn't material to the summary judgment holding that in fact there was no proper vote of this board. Right? This theory about Anna Lou. It goes to the question of if, for example, I thought the district court's second opinion was correct that Anna Lou was the, and then she changes her mind and says no because it's a pleading problem. And in my mind, if it's not a pleading problem, then that would remove that problem. I understand you don't like the argument of Anna Lou as the sole director or whatever, but I mean that's why we're talking about it. So it's not just a pleading problem. It's also a problem that at the summary judgment phase when we argued that David was not a director, if you look at their brief in response to summary judgment and it was record number 96 in their brief, right there was the opportunity to come back with the argument at summary judgment and say no, if that's correct, Anna Lou's the only director. They didn't do it. They pivoted to futility. But how, they were the non-movement, right? I mean, they don't even have to file a brief, right, in response to summary judgment, number one. Number two, she raises it and it's a logical extension of what her opinion is and I think she recognized this. I don't think anybody got sandbagged, right? I mean, you all briefed it. You all talked about it. It's not like it came, I mean, it's not like nobody had a chance. I mean, you had another set of, another reconsideration and another reconsideration, then another reconsideration. The point as to sandbagging, I don't know if I'd use that term, but it is material to the civil rules here because they never raised the single director theory. So there was no targeted discovery on this point where we could have established exactly which of the fourth generation members were on the board and we would have pointed out that although they had the opportunity in the room in February of 2018, they did not take a vote among those people. I mean, it was not a surprise, just to kind of follow up on the question. I mean, you had just as much of an interest as they did in establishing who the correct members of the board were at this time in 2018. Even if it was properly in the case, I come back to what I said a few minutes ago, which is the bylaws say there are four members. They behaved as if there were de facto board members. That's consistent with Kentucky law and Anna Lou's own email confirms as much. I do want to make one other important point. I don't want this to go unsaid during my time. There was a reference to futility during the opening argument. Futility is irrelevant to this case because the law is clear. If you make a demand upon the board of a corporation and they do not act upon it, you cannot later argue futility. It's a decision tree. If you make the demand, we are in the business judgment territory. Futility only matters if you don't make a demand. Here, they made a demand upon not only the third generation, but every conceivable possibility formulation of what the board would be, so they can't argue futility now, just as a matter of law. That's not in this case. I'll ask one more question, please. Is there any reason to differentiate the various sub-entities of CVIL from each other? Or does their position here now rise and fall together? There is an important difference, I think, between CVIL and all the other entities for this reason. CVIL is the only one that purported to take a vote to bring a direct action. The other boards didn't even have a meeting, except for Green River had a meeting, but deadlocked as soon as Donald arrived, so they didn't authorize suit. The other reason is Keith and Nell, whose business judgment was at play, unquestionably were directors of those companies. So, you know, they are differently situated than CVIL, because there was no board meeting and they didn't purport to take a vote to sue. Can I ask one more question? The de facto director theory of those cases, and I apologize because I don't remember all of them exactly, do any of them involve an internal dispute like this one, as opposed to holding yourself out to the world? My understanding of the de facto doctrines, officers and directors, is it's really to protect innocent third parties, as opposed to resolving internal disputes. Does that make sense? I understand the distinction. As I stand here, I can't tell you off the top of my head the exact facts of the case. Obviously, we'd be happy to submit a supplemental briefing on that if you wanted. Thank you. Thank you, Counselor. Thank you, Your Honors. Mr. Parks, can you address this email? Yes. Because this email does say what your friend says it says. Yes, I can. And how I address that is this. This was a meeting with Hilliard-Lyons, which is an investment firm. Hilliard-Lyons is not a law firm. Hilliard-Lyons was not providing corporate restructuring advice. There was never any restructuring of the Tartar Companies at any point. There were preliminary meetings of this, but this notion that a meeting with Hilliard-Lyons and an email somehow amends the bylaws of Seville to create new directors is simply too far. That's not what happened here. And so to go with their theory. This seems to be a summary of a meeting where it says decided that Anna Lou, Lou Ann, Josh, and Keith will be the family members that will serve as the original board members. And then Anna Lou responds and says, looks good, Neil. Thank you for keeping the notes. And so two responses to that. First of all, in order for Seville to amend its board of directors, there must be a meeting of Seville, and there must be a vote taken of Seville, and there must be minutes that are kept of it. That didn't occur. They can point to that nowhere because it never occurred. What they had here was a concept of expanding the board to include outsiders, and it was never voted on, and it never put into effect. None of these other outsiders were ever noticed, ever became involved in the case at all, never had any operation of running the Tartar Companies. At all. It never happened. It was a concept that never happened. And corporations can only act through their actions. And so under their theory, they also say that here, that I guess the de facto director theory somehow makes Keith and Nell directors. But again, there's no action that did that. Where is that coming from? And at no point were there any efforts by Keith and Nell to hold a shareholder meeting, a board of director meetings, ever. There was a board of directors meeting in 1997. There was not another one in 2012. There was not another one in 2018. And I also note that Mr. Abate suggested they try to slip this through. Completely not accurate. If you look in its inner pleadings, they gave all required notice, all required notice, which was on February 7th for a February 22nd, I believe was the date of the meeting. Is it possible that they tried to sneak it through, yet it had the legal impact that you say it does? I mean, I guess... Could both be true? I mean, yes, yes, Your Honor, both could be true. But I mean, they didn't start it earlier. They started it on time. Donald didn't get there on time. They had a quarrel. They voted. And then when he came in, he did not say, I'm not the fact, I'm not a board member. Keith and Nell never stood up and advanced this. Hold on, we have a de facto director here meeting. Do you remember what we said at Hilliard-Lyons? Never said that. They never made any objection to it. And so I think where you're at is you either have the board of directors remain the board of directors until corporate action occurred, or if transferring the shares created a situation where there was only one board of director, it was Anna Lou, the case was properly brought under that circumstance, or if there was no board of directors, I don't quite know how we get there, but if there was, it's futile. And so Mr. Abadi's statement that there's no... that futility doesn't come into play is simply not true. I mean, if there is no board of directors, then the futility exception has to... it has to apply. There has to be recourse for somebody who stole tens of millions of dollars from a company. There has to be recourse, either in a direct or a derivative suit. Well, there has to be recourse, but you also have to observe the corporate formalities, right? I mean, we wouldn't be here if the corporate formalities had been observed all the way through. And when you don't observe the corporate formalities, you risk that you may not be able to bring a lawsuit, right? I think the response to that, Your Honor, is that there either... there has to be a board, and it either has to have been the third generation, or it has to have been Annaloo, or there has to have been a no board. I mean, when you... so under that situation, that doesn't mean a shareholder doesn't have an opportunity to assert derivative rights. I mean, you would still be able to assert derivative rights. But this was... the direct litigation, the direct action here was appropriate, either through a vote of the third generation, or through the authorization of Annaloo, who was the only director who could have authorized this. So if we don't move to the futility exception, a direct action is appropriate. It does not have to be... you don't have to plead that standing. It's not required to do so. Can I ask you one unrelated question? I mean, you say we shouldn't consider the statute of limitations in your brief, but we can affirm for any reason that's supported by the record. So of course we can consider statute of limitations. Annaloo had... I don't know when it was, it was early on, she had seen the corporate documents and he, Josh, had told her that he was not the president. Why didn't she know or have reason to know at that point? And if she did, you miss all the statute of limitations. Your Honor, excuse me, I would refer to the Osborne versus Griffin case there, because there is a confidential relationship. I mean, essentially in this case, Josh Tarter says, yes, I lied to him, but they should have known I was a liar, so they should have called it earlier on. Annaloo was not required to assume that her nephew was lying to her. She had the documents showing he was lying to her. Well, she had some sort of documents about a company called QMC, which was... She knew there were transactions with. She didn't know there were transactions with them. There's no question that she knew there were transactions with QMC. But again, I think the Osborne case is directly on point for confidential relationships. It is told until there's an actual knowledge of the illegal act. And in this case, if Josh had said, yes, I'm doing that, absolutely you're correct. But when he looks at his aunt and says, I'm not lying. And oh, by the way, in 2010 when he set this up, his grandmother owned 53% of the company. So he was stealing from his grandmother at that time. But when he says this to Annaloo, she doesn't have to... The law does not require her to say, no, I'm not going to believe that. You're lying to me. Because of the relationship. Okay. Thank you, counsel. The case will be submitted.